[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Ramunas*, Slip Opinion No. 2022-Ohio-4199.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4199

THE STATE OF OHIO, APPELLANT, *v.* RAMUNAS, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Ramunas*, Slip Opinion No. 2022-Ohio-4199.]

*Certification of conflict dismissed as having been improvidently certified.*

(No. 2021-1380—Submitted July 13, 2022—Decided November 29, 2022.)

CERTIFIED by the Court of Appeals for Delaware County,

No. 20 CAA 12 0054, 2021-Ohio-3191.

_____

{¶ 1} Sua sponte, the certification of conflict is dismissed as having been improvidently certified.

O'CONNOR, C.J., and DONNELLY, STEWART, and BRUNNER, JJ., concur.

FISCHER, J., dissents, with an opinion.

DEWINE, J., dissents, with an opinion joined by KENNEDY, J., as to Part I.

_____

**FISCHER, J., dissenting.**

**{¶ 2}** I respectfully dissent from the decision to dismiss this appeal as having been improvidently certified. I agree with the first point made in the other dissenting opinion: by dismissing this appeal, we lose an opportunity to respond to a certified-conflict question and to provide Ohio's courts with guidance in an area of law that has proved challenging for those courts. *See* dissenting opinion of DeWine, J., ¶ 1.

**{¶ 3}** Rather than dismiss this case as having been improvidently certified, I would conclude that when the record contains evidence demonstrating that burglary and theft offenses caused separate and distinct harms to a victim, then for purposes of R.C. 2941.25, the offenses of burglary and theft are not allied offenses of similar import. I would accordingly answer the certified-conflict question in the negative, reverse the judgment of the Fifth District Court of Appeals, and reinstate the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

**{¶ 4}** From December 2019 to February 2020, appellee, Kristen Ramunas, was an employee of an assisted-living facility where she stole credit cards, jewelry, and personal items from six elderly residents. She was indicted on two counts of second-degree-felony burglary, in violation of R.C. 2911.12(A)(2); three counts of fifth-degree-felony theft, in violation of R.C. 2913.02(A)(1); three counts of fourth-degree-felony theft, in violation of R.C. 2913.02(A)(1); and two counts of fourth-degree-felony identity fraud, in violation of R.C. 2913.49(B)(2).

**{¶ 5}** Ramunas pleaded guilty to the lesser-included offenses of burglary, third-degree felonies, in violation of R.C. 2911.12(A)(3), and to the remaining counts in the indictment.

**{¶ 6}** At the sentencing hearing, the trial court raised the issue whether the burglary and theft offenses should be merged. Appellant, the state, maintained that the offenses should not be merged, because the harm from burglary is different than

the harm from theft. The state also argued that when Ramunas trespassed into the victims' rooms that the burglaries were complete, whereas the thefts were not complete until Ramunas either disposed of the stolen items or did something that otherwise indicated that the stolen items would not be returned to the victims. Ramunas countered that the burglary and theft offenses should be merged because her purpose in committing the burglaries and thefts was the same.

{¶ 7} The state then presented testimony from a few of the victims' family members. The son-in-law of a married couple that was victimized by Ramunas informed the court that his in-laws had been "seriously impacted in regards to the trust that they [had] lost in their living situation and [in] the staff that remain[ed] behind." He also expressed the impact of his in-laws' loss of their belongings, specifically the emotional impact occasioned by the theft of his father-in-law's wedding ring. He stressed that it was not the loss of the ring's monetary value but what it represented—68 years of marriage—that was so significant.

{¶ 8} The trial court concluded that the burglary and theft offenses should not be merged, because each offense had a separate purpose and resulted in a separate harm. It reasoned that burglary impacts a person's ability to live peacefully within his or her own residence, which is different from the impact of theft.

{¶ 9} The trial court sentenced Ramunas to an aggregate prison term of four and a half years. The court imposed a nine-month prison sentence for each burglary offense, to run concurrently with the six-month prison sentence imposed for each of the burglary-related theft offenses. The court also imposed a six-month prison sentence for each of the remaining theft and identity-fraud offenses, to run consecutively to one another and to the sentences imposed for the burglary and burglary-related theft offenses.

{¶ 10} The Fifth District reversed, finding that the trial court erred by not merging the burglary and burglary-related theft offenses. 2021-Ohio-3191, ¶ 20.

It examined this court's holding in *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, and concluded that the harm caused by the burglaries was not separate and identifiable from the harm caused by the thefts. 2021-Ohio-3191 at ¶ 19. It reasoned that Ramunas's sole intent in entering the victims' rooms was to steal and that therefore, her conduct and the animus for entering the rooms and for stealing the items were identical. *Id.* at ¶ 18. The appellate court stated that to find that the harm caused by the burglaries was separate and identifiable from the harm caused by the thefts would nullify R.C. 2941.25, the allied-offenses statute. *Id.* at ¶ 19.

{¶ 11} The Fifth District certified its judgment to this court as being in conflict with the judgment of the Fourth District in *State v. Gillman*, 2015-Ohio-4421, 46 N.E.3d 130 (4th Dist.), which held that theft offenses and burglary offenses are not allied offenses of similar import subject to merger. We determined that a conflict exists and ordered the parties to brief the following question:

> "If an individual trespasses in an occupied structure when any person other than an accomplice of the offender is present or likely to be present with the sole purpose of committing a theft offense therein, are the burglary and the resulting theft offense allied offenses of similar import within the meaning of R.C. 2941.25?"

165 Ohio St.3d 1531, 2022-Ohio-280, 180 N.E.3d 1155, quoting the Fifth District's October 14, 2021 entry.

## II. LAW AND ANALYSIS

### *A. The parties' arguments*

{¶ 12} In this case, the state argues that the burglary and theft offenses caused separate and identifiable harms to the victims and, therefore, are not allied offenses of similar import. While the two offenses are often committed during the

4

same course of conduct, the state contends that their imports are significantly different. The state contends that a person's sense of safety and security in his or her home is violated when that person's residence is burglarized. And the person's feelings arising from that violation are not lessened if the burglar does not take any of the person's possessions or if the economic harm caused by the burglary is minimal or nonexistent. The state maintains that the legislature recognizes the significant harm that burglary inflicts on the victim and that it treats the offense of burglary more severely than the offense of theft.

{¶ 13} In support of its argument, the state points to the analysis employed by the Fourth District in *Gillman* and that court's finding that one of the victims in that case identified a harm resulting from the burglary offense that was separate from the harm caused by the theft offense. In *Gillman,* the defendant was charged with burglary and theft. *Id.* at ¶ 4. In deciding whether the offenses merged, the Fourth District examined our decision in *Ruff* and, with respect to whether the offenses were of similar import, concluded that it was necessary to examine whether each offense resulted in a separate and identifiable harm. *Gillman* at ¶ 21. The court then considered the testimony of one of the victims at sentencing. *See id*. at ¶ 23.

{¶ 14} The victim testified that her sense of privacy had been "invaded and compromised," which the Fourth District determined to be a harm resulting from the burglary offense. *Id.*, 2015-Ohio-4421, 46 N.E.3d 130, at ¶ 23. The victim also informed the trial court that she had suffered economic damage, which the Fourth District classified as a harm resulting from the theft offenses. *Id*. Lastly, the victim stated that her " 'sense of safety and well-being ha[d] been greatly compromised,' " which the Fourth District found to be harms relating to both the burglary and theft offenses. *Id*.

{¶ 15} Based on this testimony, the Fourth District determined that the victim had identified harm resulting from the burglary offenses that was separate

5

from the harm resulting from the theft offenses. *Id.* Therefore, the appellate court concluded that the offenses were of dissimilar import and should not be merged. *Id.* at ¶ 24.

{¶ 16} The state contrasts the Fourth District's analysis in *Gillman* with the analysis employed by the Fifth District in this case, arguing that the Fifth District failed to examine the record or consider whether separate harms were inflicted by Ramunas's burglary and theft offenses. The state criticizes the Fifth District for not applying part of the test outlined by this court in *Ruff* because the appellate court reasoned that considering harm in that manner would result in merger never being appropriate, *see* 2021-Ohio-3191 at ¶ 19.

{¶ 17} Ramunas counters that offenses are of similar import and cannot cause separate harms if one offense is incident to the other. To determine if an offense is incident to another requires an examination of the offender's conduct. Ramunas argues that when the offender's conduct demonstrates that the harm caused by one offense is incident to another offense, the offenses are allied. Here, the state used Ramunas's purpose to steal to establish the offense of burglary, and stealing was her only criminal purpose. Ramunas maintains that there is no separate and identifiable harm, because the burglary was committed for the sole purpose of committing theft.

{¶ 18} Ramunas also argues that the state's assertion that the degree of the offense signifies that burglary and theft cause separate harms is irrelevant. The focus in an allied-offenses analysis is not on the difference in the degree of the offenses or the different punishment imposed for each offense. If it were, Ramunas maintains, then only offenses of the same degree would merge.

### B. Ohio's allied-offenses framework

{¶ 19} In Ohio, the legislative statement on multiple punishments is found in R.C. 2941.25, which provides:

(A) Where the same conduct by [a] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 20} The other dissenting opinion advocates for a return to this court's pre-*Ruff* precedent to conduct an allied-offenses analysis. *See* dissenting opinion of DeWine, J., at ¶ 40. It may be that this court should revisit *Ruff* and, in light of the experience of Ohio's courts in applying that precedent, either fine-tune the approach set forth in *Ruff* or abandon it altogether. In this case, however, neither party has advocated for a departure from the *Ruff* approach, and both the state and Ramunas have asked this court to apply *Ruff* to reach a decision in their respective favors. Nor have we received briefing from any amicus in support of either party. Because altering or abandoning the *Ruff* approach would significantly impact Ohio's criminal law, I would defer revisiting the viability of the *Ruff* approach until we are presented with a case in which we have received full briefing on the issue and this court can make a fully informed decision.

{¶ 21} I accordingly would apply the existing allied-offenses framework to resolve the conflict before us in this case. We have established a tripartite test to determine whether a defendant can be convicted of multiple offenses under R.C. 2941.25. This test requires a court to ask three questions: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3)

Were they committed with separate animus or motivation? An affirmative answer to any of [these questions] will permit separate convictions. The conduct, the animus, and the import must all be considered." *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 31; *see also id.* at paragraphs one through three of the syllabus.

{¶ 22} We have rejected a bright-line rule for analyzing the issue of multiple punishments because a one-size-fits-all rule will not work in every situation. *Id.* at ¶ 30. Rather, an allied-offenses analysis must be driven by the facts of each case. "[T]he analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import." *Id.*

### C. Dissimilar import

{¶ 23} Our focus here is on whether the offenses of burglary and theft committed by Ramunas are dissimilar in import. There are two circumstances in which offenses will be deemed dissimilar in import, making sentences for multiple counts permissible. The first circumstance is "[w]hen a defendant's conduct victimizes more than one person [because] the harm for each person is separate and distinct." *Id.* at ¶ 26. The second circumstance is when a defendant's conduct against a single victim constitutes two or more offenses and "the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id.* Therefore, we have held that "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 26. Whether the offenses have similar import will be revealed by "[t]he evidence at trial or during a plea or sentencing hearing." *Id.*

*D. Burglary and theft are of dissimilar import*

{¶ 24} In this matter, we should decide whether the harms that resulted from Ramunas's conduct in committing burglary and theft are separate and identifiable. I would conclude that the evidence demonstrates that Ramunas's conduct resulted in separate harms and, therefore, the offenses should not be merged.

{¶ 25} One harm suffered is the violation and loss of the victims' sense of trust and security in their personal living spaces at the assisted-living facility. This harm resulted from Ramunas's entering the victims' living spaces for the purpose of stealing. The victims would have suffered this harm even if Ramunas had not stolen any property; therefore, the harm caused by the burglaries is independent of and unrelated to the harm caused by the thefts.

{¶ 26} A second harm inflicted on the victims resulted from the loss of their valuables, which was caused by Ramunas's stealing the victims' possessions. And this harm was twofold. The victims not only experienced economic harm by being deprived of the stolen items' monetary value, but they also suffered emotional harm, which was particularly acute because some of the items taken (e.g., one victim's wedding ring) had significant sentimental value.

{¶ 27} The evidence in this matter reveals that the victims suffered separate and distinct harms as the result of Ramunas's burglary and theft offenses. Therefore, under these particular facts, the offenses of burglary and theft are of dissimilar import and should not be merged.

### III. CONCLUSION

{¶ 28} I would hold that when the record contains evidence demonstrating that burglary and theft offenses caused separate and distinct harms to a victim, then for purposes of R.C. 2941.25, the offenses of burglary and theft are not allied offenses of similar import. I accordingly dissent from the court's entry. I would answer the certified-conflict question in the negative, reverse the judgment of the Fifth District Court of Appeals, and reinstate the judgment of the trial court.

_____

**DEWINE, J., dissenting.**

{¶ 29} We accepted this case to resolve a conflict in the courts of appeals. The conflict question asks how to apply the test announced in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, to determine whether a defendant's crimes are allied offenses of similar import. *See* 165 Ohio St.3d 1531, 2022-Ohio-280, 180 N.E.3d 1155. But rather than give the lower courts an answer, a majority of this court votes today to dismiss this appeal as having been improvidently certified. In doing so, it passes up an opportunity to provide clarity in an area of the law that has proved particularly challenging for Ohio's trial courts, courts of appeals, and even this court. And by retreating from that opportunity now, the majority leaves a demonstrably erroneous decision in place.

{¶ 30} The lower courts have asked for guidance. The case has been fully briefed and argued. And none of the traditional reasons for dismissing an appeal apply. There is nothing preventing this court from deciding this case; it simply lacks the will to do so. I would resolve the conflict question certified to us by the Fifth District Court of Appeals. Because a majority of this court instead decides to punt, I dissent.

## I. This case presents a conflict between the courts of appeals, and we should resolve it

{¶ 31} While working as a housekeeper at an assisted-living facility, Kristen Ramunas snuck into the rooms of six elderly residents and stole credit cards and other personal belongings. One of the victims was an 89-year-old woman suffering from dementia. Ramunas had not been assigned to clean the woman's room and was not authorized to be inside it. The victim's family members told the trial court that while inside the woman's room, Ramunas pulled a black onyx ring off the woman's finger and removed a cross necklace from around the woman's neck.

**{¶ 32}** Ramunas pleaded guilty to multiple counts of burglary under R.C. 2911.12(A)(3) and theft under R.C. 2913.02(A)(1). The question presented in this case is whether the burglary and theft offenses with respect to each victim are allied offenses of similar import subject to merger.

**{¶ 33}** The merger of offenses is governed by R.C. 2941.25. That statute provides:

> (A) Where the same conduct by [a] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

**{¶ 34}** Although the language of the statute hasn't changed since its enactment in 1972, *see* Am.Sub.H.B. 511, 134 Ohio Laws, Part II, 1866, 1994, Ohio's courts have long struggled with how to determine whether multiple offenses qualify as allied offenses of similar import. The guidance offered by this court has charitably been described as "accordion-like." Richard R. Parsons, *Punish Once, Punish Twice: Ohio's Inconsistent Interpretation of Its Multiple Counts Statute*, 36 Cap.U.L.Rev. 809, 812 (2008). This court's most recent effort to address the confusion was in *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. There, this court concluded that the question whether multiple offenses are of similar or

dissimilar import depends on the defendant's particular conduct in committing them. *Id*. at ¶ 26. The court explained that "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id*.

**{¶ 35}** In this case, the Fifth District acknowledged that under *Ruff*, it was required to determine whether Ramunas's burglary offenses produced a harm that was "separate and identifiable" from the harm caused by the thefts. 2021-Ohio-3191, ¶ 19. But the court expressed concern that under the *Ruff* approach, one crime could always be said to create a harm distinct from the other, such that no two crimes would ever merge. *Id*. Thus, the court of appeals focused instead on whether Ramunas committed the crimes through separate conduct or with a separate animus. *See id.* at ¶ 18, 20. Concluding that Ramunas committed the burglary and theft offenses as part of a single course of conduct, the court of appeals held that the offenses shared a similar import and must be merged. *Id*. at ¶ 20.

**{¶ 36}** The Fourth District Court of Appeals reached the opposite conclusion in *State v. Gillman*, 2015-Ohio-4421, 46 N.E.3d 130, ¶ 23 (4th Dist.), a case with very similar facts. The defendant in *Gillman* broke into the victims' cabins and stole property from inside. Like Ramunas, the defendant pleaded guilty to burglary and theft. But the Fourth District took a different approach in its application of *Ruff*. It pointed to one victim's statement at sentencing that her "sense of privacy had been 'invaded and compromised.' " *Gillman* at ¶ 23. Based on this, the court of appeals concluded that the burglary resulted in a harm that was "separate and identifiable" from the economic loss caused by the theft. *Id.*

**{¶ 37}** The Fourth District likewise expressed doubts about the *Ruff* test. The court of appeals commented that application of the test "results in parsing" the harms caused by the offenses (something that this court has previously advised against). *Gillman* at ¶ 23, fn. 1, citing *State v. Johnson*, 128 Ohio St.3d 153, 2010-

Ohio-6314, 942 N.E.2d 1061, ¶ 56 ("We decline the invitation of the state to parse [the defendant's] conduct into a blow-by-blow in order to sustain multiple convictions * * *"). But the court of appeals explained that despite these misgivings, it was "bound to apply the most recent test set forth by the Ohio Supreme Court in determining the merger issue." *Id.*

{¶ 38} The facts of the two conflict cases are the same in all meaningful respects. In both cases, the defendants trespassed into the victims' residences with the intent to steal and followed through on that intent by taking property from the premises. And in both cases, the defendants pleaded guilty to the offenses, so the factual record is limited. Yet the courts of appeals reached opposite conclusions regarding whether the defendants' burglary and theft offenses were of similar or dissimilar import, due largely to their conflicting views of the analysis required under *Ruff*. The Fifth District thus issued an order certifying that its decision in this case conflicts with the Fourth District's decision in *Gillman*, and this court voted to accept the case and resolve the conflict. 165 Ohio St.3d 1531, 2022-Ohio-280, 180 N.E.3d 1155.

{¶ 39} Now, nine months after finding that a conflict exists and over four months after hearing oral argument in this case, a majority of this court determines that there is no longer any cause to issue a decision. I disagree. Our rules provide that this court may dismiss a case as having been improvidently certified if it later finds that "there is no conflict" or that "the same question has been raised and passed upon in a prior appeal." S.Ct.Prac.R. 8.04; *see also Williamson v. Rubich*, 171 Ohio St. 253, 259, 168 N.E.2d 876 (1960) (dismissal is warranted when the "case presented on the merits is not the same case as presented on motion to certify"). But nothing has changed about this case since the time it was accepted. The conflict remains. The issue has not been addressed in another appeal. The matter has been preserved, and the question is squarely before us. *See Klujn v. McCloud*, 156 Ohio St.3d 419, 2019-Ohio-1334, 128 N.E.3d 203, ¶ 27 (DeWine,

J., dissenting). The courts of appeals have asked for an answer. We should give them one.

## II. We should return to the statutory language and our pre-*Ruff* precedent

{¶ 40} The answer I would provide is that because *Ruff* was wrongly decided and has proved to be unworkable, we should return to the language of the statute and our pre-*Ruff* caselaw.

### A. *The statute requires us to consider the offenses in the abstract*

{¶ 41} The issue presented in this appeal is how to determine if a defendant's conduct "constitutes two or more offenses of dissimilar import," R.C. 2941.25(B), or whether the defendant's conduct can be "construed to constitute two or more allied offenses of similar import," R.C. 2941.25(A). In the respective provisions, the terms "similar import" and "dissimilar import" modify the word "offenses." To decide whether a defendant's actions amount to offenses of similar or dissimilar import, then, we must first determine whether the offenses themselves are of similar or dissimilar import. That requires us to look at the offenses in the abstract.

{¶ 42} When Ramunas broke into the victims' rooms and stole their belongings, she committed burglary under R.C. 2911.12(A)(3) and theft under R.C. 2913.02(A)(1). So, how do we determine whether those offenses, in the abstract, have a similar or dissimilar import?

{¶ 43} R.C. 2941.25 supplies the meaning of "similar import." R.C. 2941.25(A) establishes a prohibition against cumulative punishments: when a defendant, by the same conduct, commits multiple "allied offenses of similar import," the defendant may be convicted of only one of those offenses. Conversely, R.C. 2941.25(B) authorizes multiple punishments in some circumstances. When a defendant commits multiple "offenses of dissimilar import," he may be convicted of each offense. But even when a defendant commits "two or more offenses *of the same or similar kind*," he may still be convicted of multiple offenses if they were

"committed separately or with a separate animus as to each." (Emphasis supplied.) R.C. 2941.25(B).

{¶ 44} Thus, offenses are "allied offenses of similar import" when they are "of the same or similar kind." Indeed, this court has consistently understood the phrase "same or similar kind" in division (B) to refer to the term "allied offenses of similar import" in division (A). *See, e.g.*, *State v. Mitchell*, 6 Ohio St.3d 416, 418, 453 N.E.2d 593 (1983) ("In the event that the court finds the offenses being compared are allied offenses of similar import," it must then determine "whether the offenses were committed separately or with a separate animus as to each"); *State v. Williams*, 124 Ohio St.3d 381, 2010-Ohio-147, 922 N.E.2d 937, ¶ 16 ("If the offenses are allied, the court proceeds to the second step and considers whether the offenses were committed separately or with a separate animus"); *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 20 ("R.C. 2941.25(B) sets forth three categories in which there can be multiple punishments: (1) offenses that are dissimilar in import, (2) offenses similar in import but committed separately, and (3) offenses similar in import but committed with separate animus").

{¶ 45} It is not surprising that the statute asks whether the offenses are of the "same or similar kind." As this court has explained, the enactment of R.C. 2941.25 was "an attempt to codify the judicial doctrine of merger." *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 11, citing *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). That doctrine rests on the premise that " 'a major crime often includes as inherent therein the component elements of other crimes.' " *Logan* at 131, quoting *State v. Botta*, 27 Ohio St.2d 196, 201, 271 N.E.2d 776 (1971). Under the doctrine of merger, when " 'one crime necessarily involves another, * * * the offense so involved is merged in the offense of which it is a part.' " *Botta* at 201, fn. 1, quoting 21 American Jurisprudence 2d 90 (1965).

**{¶ 46}** Consistent with that understanding, the rule first announced by this court was that "for two crimes to constitute allied offenses of similar import, * * * [t]he offenses and their elements must correspond to such a degree that commission of the one offense will result in the commission of the other." *Logan* at 128, citing *State v. Donald*, 57 Ohio St.2d 73, 386 N.E.2d 1341 (1979). In adopting that rule, we noted that "in many cases a single criminal act could constitute two or more similar crimes." *Id*. at 130. And we recognized that the General Assembly had "attempted to remedy this problem by enacting R.C. 2941.25." *Id*. at 130-131.

**{¶ 47}** Take, for instance, the crimes of theft and receiving stolen property. Theoretically, any time a person commits a theft, he could be said to have simultaneously received stolen property. *See Maumee v. Geiger*, 45 Ohio St.2d 238, 243-244, 344 N.E.2d 133 (1976). Yet, we have explained that under the doctrine of merger, "as to the principal offender who steals a motor vehicle, any acts of receiving or concealing the same motor vehicle knowing it to have been stolen are considered merged into the crime of auto theft itself." *Botta* at 204. This court has understood the General Assembly to have enacted R.C. 2941.25 "in conformity with" the merger analysis described in *Botta*. *Geiger* at 242. We have therefore held that "[a]lthough receiving is technically not an included offense of theft, it is, under R.C. 2941.25, an 'allied offense of similar import.' " *Id*. at 244.

**{¶ 48}** Similarly, we have said that "implicit within every forcible rape" is a restraint of the victim's liberty sufficient to establish the offense of kidnapping. *Logan*, 60 Ohio St.2d at 130, 397 N.E.2d 1345. In other words, in committing rape, the defendant's conduct could also be "construed to constitute" the offense of kidnapping. *See* R.C. 2941.25(A). Those offenses are therefore allied offenses of similar import, and as such, the defendant may not be convicted of both rape and kidnapping if they were committed by the same act and with the same immediate motive. *Logan* at 131-132. But if the rape and kidnapping offenses were, from a

factual standpoint, committed through separate conduct or with different motives, the defendant may be punished for both. *Id*.

{¶ 49} This analysis is not unlike that used by the United States Supreme Court as a means of determining whether two crimes constitute the same offense for double-jeopardy purposes. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution has been understood to prohibit the imposition of " 'multiple punishments for the same offense' " during a single proceeding. *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), quoting *N. Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). When "the same act or transaction constitutes a violation of two distinct statutory provisions," courts consider whether "each provision requires proof of a fact which the other does not" to determine whether a defendant may be punished for two offenses or only one. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). This court's original allied-offenses test implicitly incorporates the analysis set forth in *Blockburger*: if a defendant is found guilty of two offenses and both offenses do not contain an element distinct from the other, then the commission of the one offense must necessarily result in the commission of the other.

{¶ 50} In short, R.C. 2941.25(B) provides "a clear indication of the General Assembly's intent to permit cumulative sentencing for the commission of (1) offenses of dissimilar import and (2) offenses of similar import committed separately or with separate animus." *State v. Brown*, 119 Ohio St. 3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 17. The import is determined by the offenses themselves. If the offenses do not share a similar import, the analysis ends. It is only when the offenses are of similar import that we proceed to the next step and consider the defendant's particular conduct in committing them.

*B. The test announced in* Ruff *deviates from the statute's plain language*

**{¶ 51}** In *Ruff*, this court abandoned its longstanding precedent that the import of the offenses involves a review of the offenses in the abstract. The court concluded instead that courts "must focus on the defendant's conduct" to determine whether two offenses are allied offenses of similar import, *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E. 3d 892, at ¶ 30, explaining that offenses are of dissimilar import if they involve "separate victims or if the harm that results from each offense is separate and identifiable," *id*. at ¶ 26.

**{¶ 52}** This was a misstep. Whether the defendant's conduct involved separate victims or resulted in separate harms is relevant under the statute, but not to the question whether the offenses are allied offenses of similar import. Rather, those considerations relate to the next part of the analysis: whether the defendant committed the offenses separately or with a separate animus as to each. As the justice concurring in judgment only in *Ruff* explained, the court "collapse[d] into a single analysis" what are in reality distinct inquiries under the statute—the import of the offenses and the defendant's conduct in committing them. *Id.* at ¶ 42 (French, J., concurring in judgment only). By looking to the particular facts of the case to evaluate the import of the offenses, the court in *Ruff* deviated from the plain language of R.C. 2941.25.

**{¶ 53}** *Ruff*'s fact-specific—and extrastatutory—approach has unnecessarily confused what should be a straightforward inquiry. That this case is before us as part of a certified conflict simply highlights that point. Moreover, the test established in *Ruff* is unworkable in practice. It allows judges nearly unbridled discretion to merge or not merge offenses based on how broadly or narrowly the judge chooses to categorize the harm that a particular victim suffers from an offense. As a result, it virtually guarantees that offenders who commit the same offenses (like Ramunas and the offender in *Gillman*) will suffer widely disparate results with respect to whether their offenses must merge.

18

*C. The statutory test is simpler and produces more reliable results*

{¶ 54} The analysis required by the statute is far simpler than the *Ruff* analysis and produces far more reliable results. I would therefore return to comparing the offenses in the abstract to determine their import, applying the tests set forth in *Blockburger*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, and in this court's early R.C. 2945.21 precedent: that is, if "the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import," *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 26. *See also Logan*, 60 Ohio St.2d at 128, 397 N.E.2d 1345.

{¶ 55} The offenses in this case are not allied offenses of similar import. Ramunas was convicted of burglary under R.C. 2911.12(A)(3). That statute prohibits a person from (1) trespassing, (2) in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, (3) by force, stealth, or deception, (4) with the purpose to commit any criminal offense therein. She was also convicted of theft in violation of R.C. 2913.02(A)(1), which provides, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent."

{¶ 56} It is apparent under even the most cursory review of these crimes that they are not of the same kind. Both require proof of multiple elements that the other does not. *See Blockburger* at 304. And neither offense is implicit in the commission of the other. *See Logan* at 130-132. A person who breaks into a house with the intent to steal something but finds nothing worth taking commits a burglary but not a theft. And a person who enters with permission commits only a theft when that person makes off with the resident's possessions.

{¶ 57} Because the offenses of burglary and theft are not allied offenses of similar import, the inquiry ends there. They are not subject to merger under R.C. 2941.25.

### III.  Conclusion

{¶ 58} The Fifth District Court of Appeals erred in concluding that Ramunas's burglary and theft convictions must be merged.  I would therefore reverse its judgment and reinstate the judgment of the trial court.  By choosing to dismiss the case rather than decide it, this court allows an improper sentence to stand and ensures that the manner in which the allied-offenses analysis is applied to a particular defendant will depend largely on what county he happens to be prosecuted in.  I respectfully dissent.

KENNEDY, J., concurs in Part I of the foregoing opinion.

_____

Melissa A. Schiffel, Delaware County Prosecuting Attorney, and Mark C. Sleeper, Assistant Prosecuting Attorney, for appellant.

Campbell Law, L.L.C., and April F. Campbell, for appellee, Kristen Ramunas.

_____